UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

Case No.   **EDCV 17- 2166 JGB (SHKx)**                                    Date   July 1, 2019

Title   *Eric Boyd, et al. v. May Trucking Company*

Present: The Honorable     JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

MAYNOR GALVEZ                                             Phyllis A. Preston
Deputy Clerk                                                    Court Reporter

Attorney(s) Present for Plaintiff(s):                    Attorney(s) Present for Defendant(s):

Kyle R. Nordrehaug                                         Megan Emslie Ross
Brian J. Mankin

**Proceedings:     Order GRANTING Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 48)**

On May 13, 2019, Plaintiffs Eric Boyd, Israel Whatley, Arturo Torres Romero, Victor Romano, and Gregory Gingell (collectively, "Plaintiffs") filed this Motion for Preliminary Approval of Class Action Settlement. ("Motion," Dkt. No. 48-1.) The Motion is unopposed. The Court held a hearing on this matter on July 1, 2019. Upon consideration of the papers filed in support of the Motion, as well as oral argument presented by the parties, the Court GRANTS the Motion.

## I.     BACKGROUND

On September 28, 2017, Boyd and Whatley filed a Complaint in the Superior Court of California, County of San Bernardino against Defendant May Trucking Company. ("Complaint," Dkt. No. 1-1.) Defendant removed the action to this Court on October 20, 2017. (Dkt. No. 1.)

On October 20, 2017, Romero filed a separate Complaint against Defendant in the Superior Court of California, County of Riverside which Defendant removed to this Court on November 29, 2017. (Romero v. May Trucking Company, et al., Case No. 5:17-cv-02406-JGB-SHK, Dkt. No. 1.) On February 12, 2018, Romero filed a first amended complaint adding Romano and Gingell to the action. ("FAC," Romero Dkt. No. 29.)

On May 4, 2018, this Court entered an order to consolidate the actions. (Dkt. No. 37.) On June 11, 2018, Plaintiffs filed a consolidated complaint. ("Consolidated Class Action Complaint," Dkt. No. 40.) The Consolidated Class Action Complaint alleges eight causes of action: (1) unfair competition (Cal. Bus. & Prof. Code § 17200, et seq.); (2) minimum wage violation (Cal. Lab. Code §§ 1194, 1197, 1197.1); (3) failure to provide meal periods (Cal. Lab. Code §§ 226.7, 512, and the applicable IWC Wage Order); (4) failure to provide rest periods (Cal. Lab. Code §§ 226.7, 512, and the applicable IWC Wage Order); (5) failure to reimburse business expenses (Cal. Lab. Code § 2802); (6) itemized wage statement penalties (Cal. Lab. Code §§ 226); (7) waiting time penalties (Cal. Lab. Code §§ 201, 202, 203); and (8) violations under the Private Attorney General Act ("PAGA") (Cal. Lab. Code § 2698 et seq.).

On May 13, 2019, Plaintiffs filed this Motion. They attached the following items to the Motion:

- Memorandum of Points and Authorities (Dkt. No. 48-1);
- Declaration of Brian Mankin ("Mankin Declaration," Dkt. No. 48-2);
- Settlement Agreement (Dkt. No. 48-2);
- Notice of Pendency of Class Action Settlement and Hearing Date for Final Court Approval ("Class Notice," Dkt. No. 48-3.);
- Notice of Proposed Settlement (Dkt. No. 48-4); and
- Proposed Orders (Dkt Nos. 5, 6, 7).

On July 1, 2019, the Court held a hearing on the proposed settlement.

## II.   LEGAL STANDARD

Approval of a class action settlement requires certification of a settlement class. La Fleur v. Med. Mgmt. Int'l, Inc., 2014 WL 2967475, at *2–3 (C.D. Cal. June 25, 2014) (internal quotation marks omitted). A court may certify a class if the plaintiff demonstrates the class meets the requirements of Federal Rules of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). See Fed. R. Civ. P. 23; see also Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996). Rule 23(a) contains four prerequisites to class certification: (1) the class must be so numerous that joinder is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims of the class representative must be typical of the other class members; and (4) the representative parties must fairly and adequately protect the interests of the class. See Fed. R. Civ. P. 23(a). Rule 23(b) requires one of the following: (1) prosecuting the claims of class members separately would create a risk of inconsistent or prejudicial outcomes; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief benefitting the whole class is appropriate; or (3) common questions of law or fact predominate so that a class action is superior to another method of adjudication. Fed. R. Civ. P. 23(b).

Class action settlements must be approved by the court. See Fed. R. Civ. P. 23(e). At the preliminary approval stage, the Court "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." Id. "The settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval." Acosta v. Trans Union, LLC, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original). To determine whether a settlement agreement is potentially fair, a court considers the following factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement. Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003).

### III. CONDITIONAL CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS

The parties seek certification of the proposed settlement class for purposes of the Settlement Agreement. (Mot. at 10.) The proposed class includes "all California resident individuals who worked for Defendant May Trucking Company in California as truck drivers during the time period of September 7, 2013 through November 6, 2018 ("Class Period")." (Settlement Agreement § I.C.) The Court first addresses the Rule 23(a) requirements and then turns to the Rule 23(b) requirements.

**A. Requirements of Rule 23(a)**

Rule 23(a) requires the following: (1) the class must be so numerous that joinder is impracticable (numerosity); (2) there must be questions of law or fact common to the class (commonality); (3) the claims of the class representative must be typical of the other class members (typicality); and (4) the representative parties must fairly and adequately protect the interests of the class (adequacy). See Fed R. Civ. P. 23(a).

    **1. Numerosity**

A class satisfies the prerequisite of numerosity if it is so large that joinder of all class members is impracticable. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). To be impracticable, joinder must be difficult or inconvenient, but need not be impossible. Keegan v. Am. Honda Motor Co., 284 F.R.D. 504, 522 (C.D. Cal. 2012). There is no numerical cutoff for sufficient numerosity. Id. However, 40 or more members will generally satisfy the numerosity requirement. Id. Here, the Settlement Class includes approximately 1,569 class members. (Settlement Agreement § III.C.5.) Accordingly, the numerosity requirement is satisfied.

    **2. Commonality**

The commonality requirement is satisfied when plaintiffs assert claims that "depend upon a common contention . . . capable of classwide resolution—which means that a

determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

Plaintiffs contend that their employment with Defendant and the fact of settlement is sufficient to satisfy the commonality requirement. (Mot. at 11-12.) This sparse statement is insufficient for the Court to find commonality. However, the Court finds commonality is present because the claims raised in the complaint apply uniformly to every class member, including Defendant's alleged failure to pay proper minimum wages, waiting time penalties, meal and rest period penalties, failure to reimburse business expenses, and failure to provide accurate itemized wage statements. (Mot. at 15-18.) Defendant's employment policies applied equally to all class members. For example, if the Court finds Defendant's practice or policy unlawful, then all class members will have had a significant common question answered. The only remaining issue would then be individual determinations of damages. The Court is satisfied that Plaintiff has met the commonality requirement.

### 3. Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff, and whether other class members have been injured by the same course of conduct." Wolin v. Jaguar Land Rover No. Am., 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Hanon, 976 F.2d at 508). Because typicality is a permissive standard, the claims of the named plaintiff need not be identical to those of the other class members. Hanlon, 150 F.3d at 1020. Here, Plaintiffs argue their claims are typical of the class because they were subject to Defendant's alleged wage and hour violations; failure to pay minimum wages; meal and rest break violations; failure to reimburse business expenses; and failure to pay timely wages. (Mot. at 12.) The compensation practices to which Plaintiffs were subjected are uniform practices to which the entire class was allegedly subjected. (Id.) Accordingly, the Court is satisfied that Plaintiffs have met the typicality requirement.

### 4. Adequacy

In determining whether a proposed class representative will adequately protect the interests of the class, the court should ask whether the proposed class representative and her counsel have any conflicts of interest with any class member and whether the proposed class representative and her counsel will prosecute the action vigorously on behalf of the class. Johnson v. General Mills, Inc., 275 F.R.D. 282, 288 (C.D. Cal. 2011).

Plaintiffs were employed by Defendant during the class period. (Mot. at 13.) Plaintiffs argue they will adequately represent the class because they experienced the same wage and hour practices as the rest of the class members, understand their duties as class representatives, have been willing to undergo the risk of litigation, and have no conflicts of interest. (Id.) Finally, Plaintiffs' counsel are experienced practitioners with extensive experience in wage and hour class

actions.  (Mot. at 13; Mankin Decl. ¶¶ 2-6; Nordrehaug Decl. ¶ 2.)  At the July 1, 2019 hearing, Plaintiffs' counsel represented they have no conflicts of interest with the class. Thus, the adequacy requirement is met here.

**B. Requirements of Rule 23(b)**

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 614 (1997).  Here, Plaintiffs allege the Settlement Agreement satisfies the requirements of Rule 23(b)(3).  (Mot. at 13.)

Rule 23(b)(3) requires (1) issues common to the whole class to predominate over individual issues and (2) that a class action be a superior method of adjudication for the controversy.  See Fed. R. Civ. P. 23(b)(3).  As to predominance, the "inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon, 150 F.3d at 1022 (quoting Amchem, 521 U.S. at 623).  "[T]he examination must rest on 'legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement.'"  Id. (same).  A class should not be certified if the issues of the case require separate adjudication of each individual class member's claims.  Id.

Here, adjudication by representation is warranted because questions common to the Settlement Class can be resolved for all members of the class in a single adjudication.  Specifically, Plaintiffs contend the settlement obviates the litigation of individual liability and damage issues.  (Mot. at 13.)  Here, Plaintiffs do not provide any argument as to whether common issues predominate.  However, the Court finds that common issues predominate because Plaintiffs were subject to the same compensation plans and employment policies.  (Mot. at 5.)  Defendant allegedly subjected Plaintiffs to uniform compensation practices, including violations of unpaid minimum wages, meal and rest break violations, failure to reimburse business expenses, and failure to pay timely wages.  (Mot. at 12.)  All class members were allegedly subjected to the same policies.  (Id.)  Thus, the Court is satisfied that the common questions predominate.

A class action must also be superior to other methods of adjudication for resolving the controversy.  Fed. R. Civ. P. 23(b)(3).  To determine superiority, a court's inquiry is guided by the following pertinent factors:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D). However, "[confronted] with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." Amchem, 521 U.S. at 620.

Here, Plaintiffs do not provide any argument as to why a class action is superior. However, the Court finds that a class action is superior to other available methods because the class mechanism provides an effective mechanism to aggregate the claims of individuals who may otherwise not sue due to fear of retaliation or adverse employment impact. Should any class members prefer to pursue their claim individually, they may opt out of the Settlement Agreement. (Mot. at 9.) The Court also finds that in this case, the class mechanism provides an economy of scale for class members and promotes judicial economy. Because the parties seek class certification only for settlement purposes, the Court ends its analysis here and concludes the superiority requirement is satisfied.

## IV. SETTLEMENT AGREEMENT

### A. Settlement Class

The Settlement Class includes "all California resident individuals who worked for Defendant May Trucking Company in California as truck drivers during the time period of September 7, 2013 through November 6, 2018 ("Class Period")." (Settlement Agreement § I.C.) There are approximately 1,569 class members. (Settlement Agreement § III.C.5.)

### B. Financial Terms

Below is an overview of the financial terms of the Settlement Agreement:

- Gross settlement amount:                                           $1,254,400
- Attorneys' fees:                                                   $418,133
- Litigation costs:                                                  $25,000
- Settlement administration costs:                                   $20,000
- Service award to class representatives:                            $45,000
- PAGA payment to LWDA (75% of $20,000 award):                       $15,000
- Credit for amount already paid by Defendants:                      $54,400
- Net settlement amount:                                             $676,867

The $1,254,400 gross settlement amount is non-reversionary. (Settlement Agreement § III.A.) Class members will have 180 days to cash a settlement check. (Id. § III.E.10.) If a check remains uncashed, the settlement administrator will direct funds from the uncashed check to the California Department of Industrial Relations Unclaimed Wages Fund in the name of the class member. (Id.)

1. **Settlement Class Members**

Each class member shall be eligible to receive payment and will not be required to submit a claim form to receive payment under the Settlement Agreement. (Settlement Agreement § III.A.) Each class member will automatically be issued payment as long as he or she does not timely and validly request exclusion. (See Settlement Agreement § III.E.3.c.; see also Notice at 4.) The portion of the net settlement amount payable to each class participant shall be calculated as follows:

> The Settlement Share for each Participating Class Member will be calculated by (a) dividing the Net Settlement Amount by the total number of work days worked by Participating Class Members in the Class Period as a truck driver for Defendant and (b) multiplying the result by each individual Participating Class Member's work days worked as a truck driver for Defendant during the Class Period. The Settlement Share will then be reduced by any payment previously received by the Class Member from the $54,400 already paid by the Defendant to that Class Member. To the extent that this credit results in any deficiency, the difference will be deducted from the allocation for Class Counsel Fees Payment.

(Settlement Agreement § III.C.2.) The net settlement amount is $676,867, and there are approximately 1,569 class members. (Mot. at 1, 7, 8.) Plaintiffs calculate an average recovery of approximately $431 per class member. (Id. at 2.)

2. **Class Representatives**

The Settlement Agreement provides for Plaintiffs Boyd, Romero, and Whatley to each receive a $10,000 service award and Plaintiffs Romano and Gingell to each receive a $7,500 service award. (Settlement Agreement § III.B.1.)

3. **California Labor and Workforce Development Agency ("LWDA") Payment**

The parties allocated $20,000 as a PAGA award, of which 75% ($15,000) will be paid to the LWDA with the balance remaining in the net settlement amount for distribution to class members. (Settlement Agreement § III.B.3.)

4. **Settlement Administration Costs**

The settlement administrator, ILYM Group, will be paid from the gross settlement amount for the cost of administering the Settlement Agreement. (Settlement Agreement §§ III.B.4, III.D.) The costs of settlement administration will not exceed $20,000 (Settlement Agreement § III.B.4.) The proposed Notice reflects this amount. (Notice at 2.)

### 5. Attorneys' Fees and Costs

Class counsel will seek an award of attorneys' fees not to exceed $418,133 (or one-third of the gross settlement amount) and litigation costs not to exceed $25,000. (Settlement Agreement § III.B.2; Mot. at 2, 21.) The proposed Notice submitted for review reflects Plaintiffs' counsel will not seek more than $25,000 in costs. (Notice at 3.)

### C. Injunctive Relief

The Settlement Agreement does not appear to include any injunctive relief.

### D. Release

All settlement class members who do not request exclusion agree to release their claims as follows:

> Plaintiffs and the Participating Class Members release Defendant and the Released Parties from all Released Claims that occurred during the Class Period. The "Released Claims" are all claims alleged in the Action and all claims which could have been alleged based upon the facts alleged in the Action. The release expressly excludes all other claims, including claims for wrongful termination, retaliation, unemployment insurance, disability, social security, workers' compensation, and claims outside the Class Period.

(Settlement Agreement § III.F.1.) Plaintiffs also agree to a broader release, releasing claims arising from the facts alleged in the complaint as well as any and all known or unknown claims, demands, rights, liabilities, and causes of action arising out of their employment with Defendant. (See id. § III.F.2.) Plaintiffs waive their rights under California Civil Code § 1542, which states that "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." (Id. § III.F.3.) This release excludes claims not permitted as a matter of law and Plaintiff Whatley's separate individual lawsuit filed California Superior Court, County of San Bernardino on August 20, 2018. (Id. § III.F.2.)

### E. Notice

The Settlement Agreement proposes the following procedure to notify class members of the settlement. (See Settlement Agreement § III.E.2.) Within 14 days after the issuance of a preliminary approval order, Defendant will provide the settlement administrator an electronic database or excel file containing each class member's class data. (Id. § III.E.2.a.) Within 14 days of receiving the class data, the settlement administrator will mail the Class Notice Packets to all class members via first-class regular U.S. mail using the mailing address information provided by Defendant. (Id. § III.E.2.b.) Any mail returned because of an incorrect address will be re-mailed

within 10 days by the settlement administrator to a more current address. (Id. § III.E.2.c.) The settlement administrator will be responsible for tracing the mailing address of any class member for whom a notice packet is returned and re-mailing to class members a notice packet for whom a new address is found. (Id.) Pursuant to CAFA, within 10 days after entry of a preliminary approval order, Defendant will serve the Attorney General of the United States and the appropriate state official in each state in which a class member resides a notice of the proposed settlement and any materials required by CAFA. (Id. § III.E.1.b.)

The Notice includes the following: (1) information about the notice received; (2) information about the lawsuit; (3) a summary of the Settlement Agreement; (4) information about the release claims; (5) an estimate of the class member's settlement share; (6) information about how to receive payment; (7) procedures about how to request exclusion; (8) procedures about how to object to the proposed settlement; (9) the date and time of the Final Approval Hearing; and (10) contact information for the settlement administrator. (See Notice.)

The Notice informs class members that they may dispute the number of qualifying work days for the purposes of settlement. To dispute the qualifying number of work days, a class member will have 45 days from the date of mailing the Class Notice Packet to contact the settlement administrator. (Settlement Agreement § III.E.3.a.)

The Notice informs class members of their right to request exclusion from the settlement. (Settlement Agreement § III.E.3.c; Notice at 4.) To opt out of the settlement, class members must mail the settlement administrator by first-class mail a signed and dated election not to participate not later than 45 days after the settlement administrator mails the Class Notice Packet. (Id.) A signed election not to participate must be received by the settlement administrator within 52 days of the mailing date of the packets. (Settlement Agreement § III.E.3.c.) If a question is raised about the authenticity of the signed election not to participate, the settlement administrator will have the right to demand additional proof of the class member's identity. (Id.) Any class member who does not complete a timely election not to participate will participate as a class member and will be bound by the conditions of the settlement. (Id.)

A valid request for exclusion must include the class member's name, current address, signature, and last four digits of her social security number. (Notice at 4.) A request for exclusion that is untimely, incomplete, or unsigned will be rejected and the class member will remain bound by the settlement and the release. (Id.) If 10% or more of the class members timely submit elections not to participate in the settlement, Defendants will have the right to void the settlement and the parties will have no further obligations under the settlement. (Settlement Agreement § III.E.4.) Defendant will notify class counsel and the Court whether it is exercising this right to void not later than seven days after the settlement administrator notifies the parties of the number of valid elections not to participate in this settlement it received. (Id.)

The Notice also informs class members of their right to object to the settlement. (Settlement Agreement § III.E.3.a; Notice at 4-5.) Such a request must be submitted to the Court and received no later than 45 days after the settlement administrator mails the class notice.

(Settlement Agreement § III.E.3.a.)  Objections must state the class members name, current address, and telephone number and describe why the settlement is unfair and whether the class member intends to appear at the Final Approval Hearing.  (Notice at 4.)

To object to the settlement, a class member must not exclude herself from the settlement.  (Notice at 4.)  Any class member who does not object in the manner provided by the notice will waive any objection to the notice.  (Id. at 5.)

**F.  Administration**

ILYM Group will serve as the settlement administrator.  (Settlement Agreement §§ I.Z, III.D.)  Settlement administration duties include preparing, printing, and mailing the Class Notice Packet to class members; conducting a National Change of Address search on a Class Notice Packet returned as non-deliverable, and re-mailing the Class Notice Packet to a class member's new address; setting up a toll-free telephone number to receive calls from class members; receiving and confirming validity of elections not to participate in settlement forms; providing the parties with weekly status reports about the delivery of Class Notice Packets and receipt of completed elections not to participate in settlement forms; calculating settlement shares; issuing the checks due and tax reports required under the settlement; and otherwise administering the settlement.  (Id. § III.D.)

The settlement administrator will have the final authority to resolve disputes concerning class member settlement shares.  (Id.)  The settlement administrator will calculate payroll withholdings for taxes and will transmit them to the appropriate state and tax authorities.  (Id.)  A settlement administrator will also establish a settlement fund.  (Id.)

## V.  PRELIMINARY APPROVAL OF THE SETTLEMENT

"[Rule 23] requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable."  Hanlon, 150 F.3d at 1026.  To determine whether a settlement agreement meets these standards, the court considers a number of factors, including "the strength of the plaintiff's case, the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout trial, the amount offered in settlement, the extent of discovery completed, and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant, and the reaction of the class members to the proposed settlement."  Stanton, 327 F.3d at 959 (internal citations omitted).  The settlement may not be a product of collusion among the negotiating parties.  In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 458 (9th Cir. 2000) (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992)).

"At the preliminary approval stage, some of the factors cannot be fully assessed.  Accordingly, a full fairness analysis is unnecessary."  Litty v. Merrill Lynch & Co., 2015 WL 4698475, *8 (C.D. Cal. Apr. 27, 2015).  Rather, the court need only decide whether the settlement is potentially fair, Acosta, 243 F.R.D. at 386, in light of the strong judicial policy in

favor of settlement of class actions. Class Plaintiffs, 955 F.2d 1276. "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon, 15 F.3d at 1027.

### A. Extent of Discovery and Stage of the Proceedings

For a court to approve a proposed settlement, "[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement." Acosta, 243 F.R.D. at 396 (internal quotation marks omitted). In preparation for mediation, parties engaged in an informal discovery process, which helped Plaintiffs analyze the validity of their claims, the potential claims of all class members, and Defendant's defenses. (Id.) On September 5, 2018, the parties reached a settlement at mediation. (Id.)

Plaintiffs represent that success on their claims was uncertain. (Mot. 14.) Plaintiffs identified the following weaknesses with their claims: (1) the possibility that federal law preempts their California state law wage and hour claims; (2) arguments raised by Defendant that California state wage and hour laws do not protect Plaintiffs because Defendant is an Idaho corporation with its principal place of business in Oregon and drivers primarily drove outside of California; and (3) other defenses of Defendant's compensation system. (Id.) Plaintiffs also note that Defendant raised arguments that the proposed class lacked commonality and predominance on liability and damage issues; that its practices complied with applicable law; and that any purported deviation from applicable law was individualized in nature. (Id.)

The parties reached the settlement amount based on discovery and information exchanges prior to and during mediation. (Id.) The settlement did not occur until Plaintiffs possessed sufficient information to evaluate the case and make an informed decision about settlement. (Mot. at 15-20.) This informed decision factored in Defendant's defenses and risks of ongoing litigation. (Id.) The Court finds the parties have engaged in substantial investigation of the facts and the applicable law. This factor weighs in favor of granting preliminary approval of the settlement.

### B. Amount Offered in Settlement

In determining whether the amount offered in settlement is fair, a court compares the settlement amount to the parties' estimates of the maximum amount of damages recoverable in a successful litigation. In re Mego, 213 F.3d at 459.

The gross settlement amount is $1,254,400, with an average recovery of $431 per class member. (Settlement Agreement § III.A.) Plaintiffs estimated the maximum potential damages to be $1,513,260 for unpaid minimum wage claims (Mot. at 15-16; Mankin Decl. ¶ 33); $3,900,000 for waiting time penalty claims (Mot. at 16; Mankin Decl. ¶ 34); $1,261,050 for the

meal and rest claims (Mot. at 17); $134,510 for failure to reimburse business expenses claims (Mot. at 18; Mankin Decl. ¶ 36); and $1,574,300 for wage statement claims (Mot. at 18.) Thus, Plaintiffs' maximum recovery is estimated at $8,383,120. The $1,254,400 gross settlement amount is approximately 15% of Plaintiffs' maximum potential recovery for the class claims.

Although the settlement amount represents a small fraction of the maximum value of this litigation, "'[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.'" In re Mego, 213 F.3d at 459 (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir.1982)). In In re Mego, the Ninth Circuit considered the difficulties in proving the case and determined the settlement amount, which was one-sixth of the potential recovery, was fair and adequate. Id. Here, although the recovery is an even smaller percentage of the maximum potential recovery, Plaintiffs face meaningful obstacles in pursuing their claims. See infra Part V.C. Considering these difficulties, the Court finds the settlement amount is potentially fair.

## C. Strength of Case and Risk, Expense, Complexity, and Likely Duration of Litigation

Plaintiffs acknowledge the risk, expense, complexity, and likely duration of litigation. (Mot. at 20.) In their Motion, Plaintiffs recognize that if settlement were to be rejected, the parties would engage in further litigation, including litigating Defendant's interlocutory appeal, certifying the class, and doing discovery on damages issues. (Mot. at 20.) The time and expenses of continued litigation could outweigh additional recovery obtained through successful litigation. (Id.) Defendant identified numerous risks, including Plaintiffs not being able to establish a class action and/or PAGA representative claim due to the highly individualized nature of Plaintiffs' claims. (Id.) The parties contend it is desirable to settle in order to limit the risk and expense of burdensome litigation and to permit business operations to continue without further distraction and expense related to this action. (Mankin Decl. ¶ 30.).

The risk, expense, complexity, and likely duration of further litigation weigh in favor of preliminary approval. Without the Settlement Agreement, the parties would be required to litigate class certification, as well as the ultimate merits of the case—a process which the Court acknowledges is long, complex, and expensive. If the settlement is not approved, Defendant will likely oppose class certification and file additional motions to defend against Plaintiffs' claims. Settlement will conserve the resources of this Court and the parties, which weighs heavily in favor of preliminary approval.

## D. Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (internal citation and quotation marks omitted). Plaintiffs' counsel has extensive experience in wage-and-hour class actions, including actions like this mater. (Mankin Decl. ¶¶ 2-6; Nordrehaug Decl. ¶ 2.) Counsel further submits

that the settlement is fair, reasonable, adequate, and in the best interests of the class. (Mankin Decl. ¶¶ 41-43; Nordrehaug Decl. ¶ 3.) This weighs in favor of preliminary approval.

**E. Collusion Between the Parties**

"To determine whether there has been any collusion between the parties, courts must evaluate whether 'fees and relief provisions clearly suggest the possibility that class interests gave way to self interests,' thereby raising the possibility that the settlement agreement is the result of overt misconduct by the negotiators or improper incentives for certain class members at the expense of others." Litty, 2015 WL 4698475, at *10 (quoting Staton, 327 F.3d at 961).

As an initial matter, the Court notes that settlement negotiations were conducted at arms-length. The parties engaged in a mediation session with an experienced and respected mediator. (Mot. at 4, 21.) The use of a mediator experienced in the settlement process tends to establish that the settlement process was not collusive. See, e.g., Satchell v. Fed Ex. Corp., 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). The Court thus turns to the financial terms of the Settlement Agreement.

Plaintiffs request a service award of $10,000 each for Plaintiffs Boyd, Romero, and Whatley, and a service award of $7,500 each for Plaintiffs Romano and Gingell. (Settlement Agreement § III.B.1; Mot. at 1.) A court may grant a modest incentive award to class representatives, both as an inducement to participate in the suit and as compensation for the time spent in litigation activities. See In re Mego, 213 F.3d at 463 (finding the district court did not abuse its discretion in awarding an incentive award to the class representatives). Here, Plaintiffs' action resulted in a policy change that affects all class members. (Mankin Decl. ¶ 46.) Plaintiffs executed full releases, unlike other class members who will only release the settled claims alleged in the complaint, and assumed significant risk in bringing this litigation, including paying Defendant's costs if they lost. (Id. ¶ 47.) Plaintiffs provided factual background for the mediation and the Consolidated Class Action Complaint, provided documents about Defendant's compensation plan, participated in phone calls to discuss litigation and settlement strategy, were available throughout mediation, and reviewed the settlement documents. (Id.) Plaintiffs participated in this action with no guarantee of receiving benefits. (Id.) The Court finds the requested service awards somewhat excessive and may not grant them in full should it finally approve the settlement. However, considering Plaintiffs' efforts and involvement in developing this action with their attorneys, the $10,000 and $7,500 service awards are potentially reasonable. For final fairness approval, the Court advises Plaintiffs to provide greater detail of their involvement in the action, and an estimate of the time each spent pursuing their claims in relation to the different service awards requested. See Clesceri v. Beach City Investigations & Protective Servs., Inc., 2011 WL 320998, at *2, 9, 12 (C.D. Cal. Jan. 27, 2011) (preliminarily approving an incentive award of $3,000 each to the two named plaintiffs when the gross settlement amount was $100,000); Vanwagoner v. Siemens Indus., Inc., 2014 WL 1922731, at *2 (E.D. Cal. May 14, 2014) (preliminarily approving $5,000 as an incentive award when the maximum settlement amount was $225,000).

Plaintiffs' counsel seek an award of attorneys' fees not to exceed $418,133 (or one-third of the gross settlement amount) and litigation costs not to exceed $25,000. (Settlement Agreement § III.B.2; Mot. at 2, 21; Notice at 2-3.) Generally, courts in the Ninth Circuit find that a benchmark of 25% of the common fund is a reasonable fee award. Hanlon, 150 F.3d at 1029 ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); Paul, Johnson, Alston & Hunt v. Graulty, 866 F.3d 258, 272 (9th Cir. 1989) (the 25% benchmark can be adjusted in either direction "to account for any unusual circumstances[,]" but the justification for adjustment must be apparent); Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citing Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990)) ("In applying this method, courts typically set a benchmark of 25% of the fund as a reasonable fee award, and justify any increase or decrease from this amount based on circumstances in the record.").

The court, in its discretion, may award attorneys' fees in a class action by applying either the lodestar method or the percentage-of-the-fund method. Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002). The court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. McGrath v. Cnty. of Nev., 67 F.3d 248, 252 (9th Cir. 1995). The hourly rates used to calculate the lodestar must be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). Next, the court must decide whether to adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69–70 (9th Cir. 1975), abrogated on other grounds by City of Burlington v. Dague, 505 U.S. 557 (1992), that have not been subsumed in the lodestar calculation. See Caudle v. Bristow Optical Co., Inc., 224 F.3d 1014, 1028–29 (9th Cir. 2000).[1]

Here, Plaintiffs seek attorneys' fees not to exceed 33.33% ($418,133) and costs not to exceed $25,000. (Settlement Agreement § III.B.2; Mot. at 2, 21; Notice at 2-3.) Plaintiffs do not offer a lodestar calculation. Although this award is potentially fair, without justifying documentation, the Court may need to adjust the award to bring it in line with the Ninth Circuit benchmark at the final approval stage.

---

[1] In Kerr, the Ninth Circuit adopted the 12–factor test articulated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) which identified the following factors for determining reasonable fees: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. Kerr, 526 F.2d at 70.

### F. Remaining Factors

In addition to the factors discussed above, the Court may consider the risk of maintaining class action status throughout the trial, the presence of a governmental participant, and the reaction of the class members to the proposed settlement. Staton, 327 F.3d at 959 (internal citations omitted). At this stage, the Court cannot fully analyze the remaining factors. For example, there is no governmental participant in this action. Additionally, the Settlement Class members have yet to receive notice of the Settlement Agreement and have not had an opportunity to comment or object to its terms.

Of the factors considered, all weigh in favor of preliminary approval of the Settlement Agreement. Thus, the Court GRANTS preliminary approval of the proposed Settlement Agreement.

## VI.  NOTICE TO THE CLASS

Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the settlement agreement. Fed. R. Civ. P. 23(e)(1). Notice must be "timely, accurate, and informative." See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989); Churchill Village, LLC v. Gen. Elec., 361 F.3d 566 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'")

The Settlement Agreement provides for direct mail notice to the class members. (Settlement Agreement § III.E.2.) The Notice includes the following: (1) information about the lawsuit; (2) a definition of the class; (3) a summary of the Settlement Agreement; (4) information about the release claims; (5) procedures and deadlines for how to dispute the settlement share received for days worked during the class period, how to object, and how to request exclusion; (6) contact information for Plaintiffs' and Defendant's counsel; (7) the date and time of a Final Approval Hearing; and (8) references to sources from which class members can get information about the Settlement Agreement. (See Notice.) Since "[i]ndividual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort," Eisen v. Carlisle and Jaquelin, 417 U.S.156, 173 (1974), the Court agrees that direct mail notice is satisfactory. The hearing for Plaintiff's Motion for Final Approval of the Class Action Settlement will take place on Monday, November 25, 2019 at 9:00 a.m.

## VII.  CLASS ACTION FAIRNESS ACT ("CAFA")

When settlement is reached in certain class action cases, CAFA requires as follows:

> Not later than 10 days after a proposed settlement of a class action
> is filed in court, each defendant that is participating in the
> proposed settlement shall serve [notice of the proposed settlement]
> upon the appropriate State official of each State in which a class
> member resides and the appropriate Federal official. . . .

28 U.S.C. § 1715(b).  The statute provides detailed requirements for the contents of such a notice.  Id.  A court is precluded from granting final approval of a class action settlement until the notice requirement is met:

> An order giving final approval of a proposed settlement may not be
> issued earlier than 90 days after the later of the dates on which the
> appropriate Federal official and the appropriate State official are
> served with the notice required under [28 U.S.C. § 1715(b)].

28 U.S.C. § 1715(d).

Defendant removed the case under CAFA.  (Dkt. No. 1 ¶ 3.)  Plaintiffs represent that Defendant shall serve all necessary Attorneys Generals a notice of the proposed settlement within ten days of Plaintiffs filing this Motion, as required by CAFA.  (Settlement Agreement § III.E.1.b; Mot. at 7-8.)  Thus, the Court finds Defendant adequately complied with CAFA such that preliminary approval of the Settlement Agreement is appropriate.

## VIII. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Preliminary Approval.  The Court ORDERS as follows:

1. The Settlement Agreement is preliminarily approved as fair, reasonable, and adequate for members of the Settlement Class.
2. The following Settlement Class is certified for settlement purposes only: all California resident individuals who worked for Defendant May Trucking Company in California as truck drivers during the time period of September 7, 2013 through November 6, 2018 ("Class Period").
3. The Court appoints Norman B. Blumenthal, Kyle R. Nordrehaug, and Aparajit Bhowmik of Blumenthal Nordrehaug Bhowmik De Blouw LLP, and Brian J. Mankin and Peter J. Carlson of Fernandez & Lauby LLP to serve as counsel on behalf of the Settlement Class for purposes of settlement only.
4. Plaintiffs Boyd, Whatley, Romero, Romano, and Gingell appointed as the representatives of the Settlement Class for purposes of settlement only.
5. The Court appoints ILYM Group as the settlement administrator.

6. The Notice of Proposed Settlement of Class Action, Conditional Certification of Settlement Class, Preliminary Approval of Settlement, and Hearing Date for Final Court Approval is approved.

7. The Court authorizes mailing of Class Notice Packet to the Settlement Class members by first-class regular mail pursuant to the Settlement Agreement.

8. The hearing date for the Final Fairness Hearing is hereby set for Monday, November 25, 2019 at 9:00 a.m. in Courtroom 1 of the United States District Court for the Central District of California, Eastern Division located at 3470 12th Street, Riverside, California 92501.

**IT IS SO ORDERED.**